## BEALL vs. RUST.

1. B. brought trover against R. to recover certain cotton. R. filed his bill to set off against such recovery charges for storage, commissions and expenses upon that and other cotton due him by B., to assert a lien on that lot for the entire charges, exceeding in value the cotton in suit, and to enjoin the trover suit. B. answered setting up counter claims for overcharges, etc.:

*Held,* that the case was a proper one for equitable relief.

(*a.*) Appearance and pleading to the merits admits jurisdiction.

(*b.*) A bill for injunction against a suit at law brought by a non-resident plaintiff will be retained to grant relief as to all matters involved in a proper settlement of the litigation pending at law.

2. The verdict was not contrary to the charge.

(*a.*) While large items of cash may not be proved by entries on a merchant's books, it would seem that where such items form a part of the regular business of the party making such entries, as of a factor or banker, they might be so proved.

3. Where one bought a lot of cotton from a warehouseman, and after some months resold to another, the cotton remaining in the warehouse, but when the first purchaser went to make delivery to his vendee he discovered that the warehouseman had, before the first sale, sold nineteen bales of the cotton to a third party and could not deliver it, whereby the purchaser was compelled to account to the second vendee for the deficit at an advanced price, under a bill in equity to settle the accounts between the warehouseman and his vendee the damages to be allowed the latter would be measured by what he was compelled to pay his vendee for the deficit, and not by what he originally paid for the cotton.

Jurisdiction. Verdict. Contracts. Damages. Evidence. Before Judge FLEMING. Dougherty Superior Court. April Term, 1881.

Reported in the decision.

B. H. HILL; W. E. SMITH; C. B. WOOTEN, for plaintiff in error.

R. F. LYON; D. H. POPE, for defendant.

SPEER, Justice.

Jeremiah Beall, of Baldwin county, brought action of trover against Rust, in Dougherty superior court, for the recovery of certain 52 bales of cotton, known as the Tyas cotton. Whereupon Rust filed against Beall his bill in equity for injunction and relief, alleging that in 1863, one Tyas stored said lot of cotton in the warehouse of Sims & Rust, in Albany, Ga.; that soon thereafter Y. G. Rust, one of said firm, sold said cotton to said Beall, who left the same on storage with said Sims & Rust, where it remained until the filing of said bill; that after said cotton was left in store Sims died, leaving Rust as surviving partner in possession of the warehouse, as factor, etc. The bill alleges further, that Beall had stored in said warehouse about 3,531 bales of cotton besides said 52 bales, for certain reasonable, just and customary charges, as well as for all advances, expenses and commissions on account of said cotton; that on the 1st of May, 1866, there was a balance of $6,901.90 due said Rust on this account, which did not include said 52 bales, and for storage, interest and commissions on the latter the bill sets up a claim of $2.214.48, in addition to the $6,901.90 aforesaid; and it is alleged that said two amounts constitute a special lien on all of the cotton of said Beall stored in said warehouse. Further, it is alleged that complainant permitted Beall to ship all of said cotton to another market, except the 52 bales, on the promise of Beall to pay said $6,901.90; that Beall has refused to pay said account, but has brought his action of trover to recover of him said 52 bales.

Further, it is alleged that Sims, the partner of complainant, in 1863, did sell to Beall a large lot of cotton, then on storage, and belonging to a planter, and after the sale thereof it was discovered that 19 bales of said lot had been previously sold by Sims to one Hoge, and as soon as the error was discovered the amount Beall gave for the 19 bales was placed to his credit, on complainant's books, the amount being $755.00; that Beall did not consent to

this, but insisted he was entitled to the value of said cotton at the time and place of delivery, or to the highest intermediate value ; that he had sold said 19 bales to John P. King, together with the lot to which it belonged, and that when the time of delivery came, and it was not delivered to said King, Beall insisted he should be allowed $2,154.40, the amount which he had refunded to said King on account thereof ; that failing to agree in the premises, the matter was referred to arbitration, which awarded to said Beall $2,154.40 on account of said 19 bales of cotton ; that Rust filed exceptions to said award, which are still pending.

The bill prays for an order to sell said 52 bales, and, after deducting the expenses, for the proceeds to be applied to Beall's credit, that he account for the balance due complainant, and that, as said set-off could not be made at law, prayed the same may be allowed in equity and the action of trover be enjoined.

Beall filed his answer, denying the indebtedness claimed by Rust, but alleged that Rust was indebted to him a large sum, not only for said 52 bales of cotton, but for over charges, and over payments, etc., etc.

On the trial of said case, the jury found a verdict for Rust for $6,064.08, with interest from 15th June, 1869.

Whereupon plaintiff in error made a motion for new trial, on various grounds, as are set forth in the record, which was overruled by the court, and he excepted.

1. Error is assigned on the ground that the court erred in not dismissing complainant's bill :

(1.) Because there was no equity in it.

(2.) Because the court had no jurisdiction to hear and determine such a case against Beall, a resident of Baldwin county, Georgia, and not a resident of Dougherty county, etc.

As to the question of jurisdiction, it may be replied the plaintiff in error appeared and pleaded to the merits, and thereby not only admitted but waived jurisdiction. Code, §§3460, 3461.

Beall brings his suit in trover to recover certain cotton. Rust, in equity, seeks to set-off against such recovery charges for storage, commissions and expenses due him by Beall, not only upon the cotton sued for, but other storage, expenses, etc., due by Beall to him for other cotton he had previously in store for Beall, and upon which the expenses were unpaid, and which he alleges were likewise a lien on the cotton sued for. We are inclined to think that this claim of the defendant, Rust, constituted such an equitable, if not a legal, defense to that suit, taken in connection with the cross claims set up by Beall in his answer for " over-charges for storage and over-payments " thereon on the cotton in store, as well as that already shipped out, that a bill was not only necessary but indispensable to settle all the questions between the parties. The rule is, as to suits for injunction filed as ancillary to suits at law, they are maintainable against a non-resident plaintiff in the suit at law, and will be retained to grant relief as to all matters involved in a proper settlement of the litigation pending at law. *Clark vs. Beall*, 39 *Ga.*, 533. Here Beall selected Dougherty county as his forum to bring Rust to account for the fifty-two bales of cotton. And as to the counterclaims set up by Rust, we think they are vitally involved in this suit brought by Beall to have all these matters properly adjudicated.

2. We cannot see that the jury found contrary to that portion of the charge of the court, in which he instructed them, " That the books of the complainants are not evidence of cash item charges, but such cash item charges must be sustained upon evidence or outside of the books." Even under the rule prescribed, we are not prepared to say there was not sufficient evidence to sustain these " cash items " outside of the evidence of the books. Neither are we prepared to indorse the rule thus given in reference to books kept by a factor or commission merchant, whose ordinary and constant business is to make cash advances to customers. It is true, such a rule was recognized by

this court in the case of a merchant's books whose usual and ordinary business was the sale of goods and merchandise (64 *Ga.*, 243), but we are not inclined to extend this rule to the books of factors and commission merchants, whose ordinary business is to make cash advancements to customers. In the case of *Bagley vs. Robertson*, 57 *Ga.*, 145, this court remarked: "There would seem to be good reason for admitting books to prove very small sums of cash advanced in the regular course of business, but where the amount is of such importance that a receipt or some written evidence might be reasonably called for by the party, books alone would be unsafe; of course, in particular lines of business, such as banking, etc., usage might be found to extend to all amounts."

Was the verdict contrary to the charge of the court as complained of in the fourth and fifth grounds of the motion? The instructions given by the court were clear and forcible on these points, and as favorable to plaintiff in error as he was entitled to expect, and we think there is evidence sufficient to sustain the verdict as found on these points. The liability of defendant for storage under general custom, and the weight and credit to be given to the admissions of parties, was clearly submitted.

3. It is further insisted that the court erred in charging the jury, as complained of in the seventh ground of the motion, that the measure of damages as to the nineteen bales of cotton that Beall was entitled to recover of Rust on account of his failure to deliver them, "was the actual money Beall paid for said cotton, with interest."

The evidence shows that Beall bought a lot of cotton from Rust, consisting of eighty-nine bales, at a certain price. That, subsequently, Beall sold the whole lot to King, at an advanced price; that when he sought to deliver this lot to King from the warehouse ot Rust, where it had been stored, it was discovered that nineteen bales of the lot had previously been sold by the firm to one Hoge, and, as a consequence, Beall was compelled to ac-

count to King for the value of the nineteen bales he so failed to·deliver at a cost of $2,154.60.

The parties are in a court of equity, and we cannot regard the rule as to the measure of Rust's liability to Beall for these nineteen bales of cotton as given by the court just and equitable to Beall. When Rust found out that by reason of this mistake of the firm in selling these nineteen bales to Hoge, that he could not deliver them as he agreed to do to Beall, he promptly gave Beall credit for the same on his books at the price he had bought them at some months before, and this the court seems to have regarded as a proper rule of settlement. To this we cannot assent. Some time had elapsed between the two sales, and cotton had largely advanced in price; what had cost Beall $715.00 when he purchased from Rust, he sold to King for $2,154.00; and when he failed to deliver, which resulted from the fault of Rust or of the partnership, we are of opinion that Rust should indemnify him fully in the amount he was forced to pay King, to-wit, the $2,154.60, with interest from the time he paid it to King, to·wit, 19th of November, 1866. We think there was, therefore, error in the instructions of the court as given and complained of in the seventh ground of the motion, "that the price paid by Beall to Rust on his purchase of the cotton was the measure of Rust's liability." We, therefore, order and adjudge that the defendant in error, on the return of the remitter in this case to the court below, do write off from the verdict and judgment recovered by him in the court below, against said Jeremiah Beall, the sum of thirteen hundred and ninety-nine dollars and thirty-five cents (the dfference between the respective sums of $2,154.60 and $755,25), with interest on the same from the 19th of November, 1866; and on his so writing off said sum with the interest aforesaid, that a new trial in said cause be refused, and the judgment affirmed. And it is further ordered, if said defendant in error fails or refuses to write off said· sum as herein directed, with the interest thereon from the

19th of November, 1866, then it is ordered that the judgment of the court below be reversed and a new trial granted.

Affirmed on terms.